UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAYLOR ABSHIRE, INDIVIDUALLY
AND ON BEHALF OF THE UNOPENED
SUCCESSION OF RICHARD ABSHIRE,
ET AL.

VERSUS

LIVINGSTON PARISH, ET AL.

CIVIL ACTION

NO. 22-548-JWD-SDJ

**RULING AND ORDER**

This matter is before the Court on the *Rule 56 Motion for Summary Judgment* (Doc. 23) filed by Defendant Sheriff Jason Ard ("Sheriff Ard" or the "Sheriff"). Plaintiffs Taylor Abshire, Kaysi Abshire, and Lindsey Johnson, all individually and on behalf of the unopened succession of Richard Abshire, and Lindsey Johnson as next of friend of E.A. and A.A., (collectively, "Plaintiffs"), oppose the motion. (Doc. 28.) Sheriff Ard has filed a reply. (Doc. 30.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Sheriff's motion is denied.

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On August 11, 2022, Plaintiffs, daughters of Robert Abshire, filed suit against Livingston Parish (the "Parish" or "Livingston"), Sheriff Ard, and Dr. James Taylor ("Dr. Taylor") (collectively, "Defendants") following Mr. Abshire's tragic death while in Livingston Parish Detention Center ("LPDC"). In sum, Plaintiffs allege that Mr. Abshire was denied a life-saving medical device—an Optune—which his family tried to provide to Defendants, and which would have reduced the risk of his dying of cancer. Plaintiffs assert the following causes of action: (1)

Negligence, Wrongful Death, and Survival (as to Livingston and Sheriff Ard); (2) violations of the Louisiana Human Rights Act, La. Rev. Stat. § 51:2231 *et seq.* ("LHRA") (as to Livingston); and (3) deliberate indifference and denial of medical care in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 (as to Dr. Taylor). (*See Compl.*, Doc. 1.)

The relevant facts are largely undisputed. (*Compare* Docs. 23-2, *with* Doc. 28-1.) In short, both Mr. Abshire and Plaintiffs did not exhaust any administrative remedies under the Louisiana Prison Litigation Reform Act, La. Rev. Stat. § 15:1181 *et seq.* ("Louisiana PLRA"), before filing the instant suit. (*See* Doc. 23-2 at ¶¶ 7–8; Doc. 28-1 at ¶¶ 7–8.)

The Sheriff now seeks summary judgment of the state law claims against him based on this alleged failure to exhaust. (Doc. 23.) Plaintiffs respond that such exhaustion is unnecessary; because they are not prisoners but rather survivors and wrongful death beneficiaries, Plaintiffs say that the Louisiana PLRA's requirements do not apply to them. (Doc. 28 at 2.)

## II. Rule 56 Standard

The standard for these motions has been articulated a number of times by this Court, including in *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 333–34 (M.D. La. 2022), and it need not be repeated in full here. In short, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]o long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**III.    DISCUSSION**

Though the relevant facts are undisputed, Sheriff Ard must still show that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the sole issue before the Court is, as Plaintiffs suggest, a legal one: Were Plaintiffs, as Mr. Abshire's survivors and wrongful death beneficiaries, required to exhaust "the pre-suit administrative procedure requirement of the Louisiana PLRA[?]" (Doc. 28 at 2.)

That question was answered by the Court in an extensive *Ruling and Order* submitted in response to the Parish's motion to dismiss. *See Abshire v. Livingston Par.*, No. 22-548, 2023 WL 2731040, at *7–11 (M.D. La. Mar. 30, 2023), Doc. 31 (deGravelles, J.). The Court concluded its analysis:

> In sum, the plain language of the Louisiana PLRA provides that it applies to only "prisoner suits"—i.e., suits involving prisoners. Moreover, this interpretation best conforms both to the legislative intent and to other similar laws involving exhaustion. Livingston's interpretation to the contrary is misguided; not only does it conflict with the plain language of the statute, but it also leads to absurd results. Consequently, this Court[ ] holds that Plaintiffs are not subject to the Louisiana PLRA's administrative-exhaustion requirement. Livingston's *Motion to Dismiss* on this issue is thus denied.

*Id*. at *11.

Again, the Court has reviewed the Sheriff's briefs, (Docs. 23, 30), and concludes that most of his arguments were either addressed in the Court's prior opinion or insufficient to trump it.

For example, the Court previously relied upon the Federal Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq.* ("Federal PLRA"), to justify its conclusion because, (1) "federal courts have interpreted the Federal PLRA's administrative-exhaustion requirement to only apply to prisoners, not a decedent's survivors or beneficiaries," *Abshire*, 2023 WL 2731040, at *10 (citations omitted); and (2) "the intent behind the Federal PLRA also supports the Court's

3

conclusion that Louisiana's PLRA does not apply to survivor and wrongful death actions," as "one of the purposes of that federal law is the goal of giving officials 'time and opportunity to address complaints internally,' " *id.* (cleaned up). Sheriff Ard now suggests that differences in the wording between the two statutes warrant a different result. (*See* Doc. 30 at 4–5.)

The Court disagrees. Again, the Federal and State PLRA "are similar in language, structure, and purpose. Both are entitled 'Suits by prisoners'; both require exhaustion of administrative remedies by a prisoner before suit can be filed; and . . . both impose limitations on recovery for emotional distress and mental anguish where there is no physical injury." *Hebert v. Maxwell*, No. 03-1739, 2008 WL 1733233, at *1 (W.D. La. Apr. 14, 2008) (Drell, J.). And, as this Court said in the last ruling, "Livingston concedes that the Louisiana PLRA was modeled on the Federal PLRA . . . ." *Abshire*, 2023 WL 2731040, at *10.

At least one other case recently discovered by this Court undermines the Sheriff's position that the Louisiana PLRA is "fundamentally different" than the Federal PLRA in that the State statute "applies to claims by prisoners . . . even if they were subsequently released or pass away." (Doc. 30 at 5.) Specifically, in *Hebert*, the question was whether plaintiff, a former inmate, could, "in the absence of a physical injury, . . . seek[ ] damages for mental anguish or emotion[al] distress." 2008 WL 1733233, at *2. In denying the motion to dismiss, Judge Drell explained:

> The plain language of these statutes suggests that the limitations apply only to suits by current prisoners, not former prisoners, and the jurisprudence bears this out. Because the Louisiana statute is so similar to the federal statute, and because we can find no Louisiana cases on point, we rely on federal jurisprudence.

*Id.* at *1. The *Hebert* court "agree[d] with" cases interpreting the Federal PLRA and found, "based on the plain language of the statutes . . . and on the lack of controlling jurisprudence to the contrary[,]" that plaintiff could seek such damages "[b]ecause he was not a prisoner at the time of

4

filing suit[.]" *Id.* at *2. The same reasoning applies here and further strengthens this Court's conclusion.

Second, in addition to the two appellate decisions relied upon by the Parish, Sheriff Ard also cites a single state trial court ruling to support his position. But, these unbinding, unpersuasive cases are not enough to change this Court's holding; again, "[t]hree [court of appeal] decisions do not *jurisprudence constante* make," *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 853 (5th Cir. 2019), and Sheriff Ard's lone trial court ruling does not convince this Court that it erred.

Additionally, Plaintiffs make two additional arguments that bolster the Court's conclusion. First, again, the Louisiana PLRA provides, "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice." La. Rev. Stat. § 15:1184(A)(2). That statute defines "administrative remedies" as "written policies adopted by governmental entities responsible for the operation of prisons which establish an internal procedure for receiving, addressing, and resolving ***claims by prisoners*** with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." *Id*. § 1184(A)(1)(a) (emphasis added). Further, " '[a]vailable' means all administrative remedies adopted by governmental entities, which address claims of the kind asserted ***by the prisoner*** even if the administrative remedies do not allow the prisoner the particular kind of relief sought." *Id*. § 1184(A)(1)(b) (emphasis added). Reading the Louisiana PLRA as a whole, these provisions lead to the unmistakable conclusion that only "claims by prisoners" require exhaustion, and administrative remedies are not available for those who are not "prisoners."

Second, the grievance policy itself reenforces the Court's holding. Specifically, the policy states, "All *inmates* of the [LPDC] shall have the right and means to report a grievance . . . ." (Doc. 23-3 at 3 (emphasis added).) Additionally, the grievance procedure begins, "After all other attempts to resolve a legitimate complaint by an *inmate* have failed[,] the inmate may request a grievance form in order to make his/her complaint known to a higher authority." (*Id.* (emphasis added).) As Plaintiffs note, the policy provides only a procedure for inmates to obtain a grievance form, not third parties like Mr. Abshire's survivors.[1] Indeed, the very title of the document is "Inmate Grievances." (*Id.*) Thus, this document too enforces the Court's decision.

Sheriff Ard maintains that the policy "should be interpreted in light of the statutory scheme set forth in the [Louisiana] PLRA," (Doc. 30 at 6), but there are two problems with this position. First, it conflicts with the requirement for summary judgment motions that reasonable inferences must be drawn in favor of the nonmovant, *see Int'l Shortstop*, 939 F.2d at 1263–64, and the Court's view of his policy is certainly reasonable. And second, the Court's view of the policy *is* consistent with the *correct* interpretation given to the Louisiana PLRA by this Court—one based on the plain language of the statute, the absurd consequences to which the Sheriff's position leads, the interpretation given by other courts to the comparable Federal PLRA, the Louisiana Legislature's specific provision in the Louisiana Medical Malpractice Act that the exhaustion requirement

---

[1] The policy specifically provides:

> After all other attempts to resolve a legitimate complaint by an inmate have failed[,] the *inmate* may request a grievance form in order to make his/her complaint known to a higher authority.
>
> Detention Center Personnel will provide *inmates* who wish to report a grievance with a copy of the Grievance Form used by the [LPDC]. Inmate Grievance Forms shall be completed and addressed to the Warden within thirty (30) days of the alleged violation, and 90 days for a personal injury grievance. The form will be delivered by Personnel without reading, alteration, interference, or delay to the Warden.

(Doc. 23-3 at 3 (emphasis added).)

applies to representatives (and the lack thereof here) and the fact that the above two appellate decisions relied upon by the Sheriff are distinguishable. *See Abshire*, 2023 WL 2731040, at *7–11.

For all these reasons, the Court finds that, as a matter of law, Plaintiffs were not required to exhaust any administrative remedies under the Louisiana PLRA before filing the instant claims against Sheriff Ard. As a result, the Sheriff's motion will be denied.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Rule 56 Motion for Summary Judgment* (Doc. 23) filed by Defendant Sheriff Jason Ard is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 22, 2023</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**