UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAYLOR ABSHIRE, INDIVIDUALLY
AND ON BEHALF OF THE UNOPENED
SUCCESSION OF RICHARD ABSHIRE,
ET AL.

CIVIL ACTION

VERSUS

NO. 22-548-JWD-SDJ

LIVINGSTON PARISH, ET AL.

### RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 57) filed by Defendant Dr. James Taylor ("Dr. Taylor"). Plaintiffs Taylor Abshire, Kaysi Abshire, and Lindsey Johnson, all individually and on behalf of the unopened succession of Richard Abshire, and Lindsey Johnson as next of friend of E.A. and A.A. (collectively, "Plaintiffs") oppose the motion (Doc. 66). Dr. Taylor has filed a reply (Doc. 75). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion for Summary Judgment* is granted.

**I.    Relevant Factual Background**[1]

Richard Abshire became Dr. Christopher Trevino's patient at Tulane Medical Center in October 2019 to treat his newly diagnosed glioblastoma brain cancer. (*PSUMF*, Doc. 66-1 at 9, ¶ 1.) Glioblastoma is an aggressive form of brain cancer associated with a very short lifespan if the

---

[1] Unless otherwise indicated, when the Court cites to *Plaintiff's Statement of Undisputed Material Facts* ("*PSUMF*") or *Taylor's Statement of Material Facts* ("*TSMF*") in support of a fact, that fact has been admitted by the opposing party. *See* M.D. La. Civ. R. 56(f)

patient is untreated. (*Id.* at 10, ¶ 2.) Dr. Trevino performed surgery on Mr. Abshire and ordered chemotherapy and an Optune to be worn 18 hours a day. (*Id.* at ¶ 3.)

The Optune is an FDA approved device, made by Novocure, designed to deliver continuous therapy for glioblastoma patients, which can result in a five-year survival rate increase from 5% to 13% when worn for the recommended amount of time. (*Id.* at ¶ 4; *Response to Plaintiffs' Statement of Undisputed Material Facts* (*RPSUMF*), Doc. 75-1 at 1, ¶ 4.) Mr. Abshire used his Optune for the 15 months prior to his incarceration, with usage above 75% for the first two months and below 75% the remaining months. (*TSMF*, Doc. 57-2 at 9, ¶ 57; *RPSUMF*, Doc. 75-1 at 1, ¶ 4.) Dr. Trevino planned to monitor Mr. Abshire through surveillance MRIs. (*PSUMF*, Doc. 66-1 at 10, ¶ 7.)

Mr. Abshire was incarcerated at the Livingston Parish Detention Center ("LPDC") on July 11, 2021. (*Id.* at 11, ¶ 11.) The next day, he told medical staff at the LPDC that he had been diagnosed with brain cancer, and LPDC staff requested his medical records from Tulane Oncology. (*Id.* at ¶ 13.) While Mr. Abshire was a pre-trial detainee, Dr. James Taylor, the Medical Director at LPDC, was physically within the LPDC two days a week. (*TSMF*, Doc. 57-2 at 2, ¶¶ 3–4.) After first seeing Mr. Abshire on July 15, 2021, Dr. Taylor told him that any medical treatment or testing would be performed at University Medical Center, New Orleans. (*Id.* at 3–4, ¶¶ 15–16.) Dr. Taylor continued the medications that Mr. Abshire had previously been on and increased his prescription for Buspar to 10 milligrams three times a day for three months. (*Id.* at 4, ¶ 17.) Dr. Taylor noted that if Mr. Abshire's neurological status declined, he would need an MRI. (*Id.* at ¶ 20.)

LPDC received Mr. Abshire's records from Tulane on July 19, 2021. (*PSUMF*, Doc. 66-1 at 11, ¶ 14.) Dr. Taylor spoke with Dr. Trevino about Mr. Abshire, his need for the Optune, the recommended 18 hours a day usage, and Mr. Abshire's MRI appointment. (*Id.* at 12, ¶¶ 21–22;

2

*TSMF*, Doc. 57-2 at 4, ¶¶ 21–22.) Soon after this conversation, Dr. Taylor indicated to Nursing Supervisor Courtney Chaney that they needed to "see about getting [Mr. Abshire's] device." (*TSMF*, Doc, 57-2 at 4, ¶ 23; Dr. Taylor Dep., Doc. 47-10 at 79:4–9.)

During Mr. Abshire's incarceration, Taylor Abshire—Mr. Abshire's daughter and a plaintiff in this case—attempted to get Mr. Abshire's Optune from his home, but the device was damaged by Mr. Abshire's fiancé throwing it down the stairs. (*PSUMF*, Doc. 66-1 at 11, ¶ 15.) The family was concerned that the Optune was broken, and a piece was missing, so a new device was ordered. (*Id.* at ¶ 16.) The new Optune was delivered to the LPDC on July 30, 2021. (*Id.* at 12, ¶ 17.) The new Optune was placed in Ms. Chaney's office that day but was not opened until August 12, 2021. (*Id.* at 14, ¶¶ 30–31.)[2]

On August 2, 2021, Dr. Taylor referred Mr. Abshire to hematology/oncology through the Livingston Parish Detention Center Doctor Call. (*TSMF*, Doc. 57-2 at 5, ¶ 28.) The same day, LPDC contacted the Department of Corrections ("DOC") and requested an oncology appointment with imaging, which was scheduled for August 31, 2021. (*Id.* at ¶ 29.) The appointment was cancelled because of Hurricane Ida. (*Id.*)

On August 24, 2021, Dr. Taylor visited Mr. Abshire, had his vitals taken, and obtained a history from him. (*Id.* at 7, ¶ 40.) At this visit, Mr. Abshire reported an increase in headaches and trouble sleeping. (*Id.* at ¶ 40.) On September 9, 2021, Dr. Taylor saw Mr. Abshire in response to his complaints of confusion, and "advised that his referral for Hematology/Oncology was back in the system." (*Id.* at ¶ 44.) Two days later, Mr. Abshire passed out and was transferred to Our Lady

---

[2] The Court notes that *PSUMF* states the date as August 12, 2022, but given that Plaintiffs admit to *TSMF* ¶ 30, stating the date as August 12, 2021, and that Mr. Abshire passed away in November 2021, the discrepancy seems to be a mere typographical error.

3

of the Lake, which Dr. Taylor did not need to approve because Mr. Abshire's situation was emergent. (*Id.* at ¶¶ 46–47.)

Mr. Abshire was released on his own recognizance and went for treatment by Dr. Trevino at Tulane Medical Center. (*PSUMF*, Doc. 66-1 at 23, ¶ 97; *TSMF*, Doc. 57-2 at 8, ¶ 52.) An MRI revealed that a tumor had developed in the back left part of Mr. Abshire's brain, away from his original tumor site, which was on the front right. (*TSMF*, Doc. 57-2 at 8, ¶¶ 49–52.) Dr. Trevino performed surgery to address the tumor, but Mr. Abshire passed away on November 28, 2021, due to complications from the surgery. (*Id.* at ¶ 54.)

## II.    RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in

4

original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III. DISCUSSION

#### a. Parties' Arguments

##### i. *Motion for Summary Judgment (Doc. 57)*

###### 1. Deliberate Indifference

Dr. Taylor first argues that he was not deliberately indifferent to Mr. Abshire's serious medical needs. (Doc. 57-1 at 9.) He looks to Fifth Circuit precedent that says "deliberate

5

indifference 'is an extremely high standard to meet.' " (*Id.* (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001))).) "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." (*Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).) Dr. Taylor argues that even negligence, gross negligence, malpractice, or unsuccessful treatment do not rise to the level of deliberate indifference. (*Id.* at 10 (quoting *Gobert*, 463 F.3d at 346).) He says that mere dissatisfaction with the medical treatment does not constitute deliberate indifference. (*Id.*)

Dr. Taylor asserts that "Plaintiffs have no evidence sufficient to support a possible finding of deliberate indifference on the part of Dr. Taylor to Mr. Abshire's medical needs, an essential element of a Section 1983 claim for damages." (*Id.* at 12.) He argues that he saw Mr. Abshire three times in response to sick call requests, reviewed his records, continued medications, ordered an MRI if there was a decline in neurological status, referred Mr. Abshire for an oncology appointment, and attempted to have the Optune set up. (*Id.*) Like Ms. Chaney, Dr. Taylor believed that the Optune had to be set up, in person, by a Novocure Representative. (*Id.* at 12–13.) Dr. Taylor argues that all of these actions show that he did not breach the standard of care and was thus not deliberately indifferent to Mr. Abshire's medical needs. (*Id.* at 13.)

2. Causation

Next, Dr. Taylor argues that, if the Court does find that he was deliberately indifferent, Plaintiffs cannot prove that he caused the recurrence of the glioblastoma tumor. (*Id.*) He says that glioblastoma "is regarded as an incurable cancer that will almost inevitably recur but does respond to treatment. The nature of the glioblastoma is such that tumor recurrence is virtually inevitable

6

and is fatal." (*Id.* at 14.) The Optune is a device that slows progression of glioblastoma but cannot reverse tumor growth. (*Id.* at 15.)

Dr. Taylor points the Court to evidence that shows Mr. Abshire did not use the Optune optimally in the time before he was incarcerated, and argues that even if Mr. Abshire had the Optune while in the LPDC, it would have been focused on the front right part of his brain, the site of the original tumor resection. (*Id.* at 15.) He also points out that the MRI performed on Mr. Abshire in September 2021 showed no growth at the previous site but did show a new tumor in the back left portion of his brain, away from where the arrays of the Optune would have been focused. (*Id.* at 15–16.) Joint defense expert Dr. Jon Olson opined that the Optune would not have stopped this tumor from developing. (*Id.* at 16.) Dr. Taylor also says that, given Dr. Trevino's testimony that the new tumor had probably only existed for a few weeks and that there was no way to know if the growth of the tumor was affected by the lack of the Optune, there is no expert medical evidence to show that Dr. Taylor's actions caused Mr. Abshire's tumor to return, causing his death. (*Id.* at 16–17.)

### 3. Qualified Immunity

Finally, Dr. Taylor argues that he is entitled to qualified immunity because Plaintiffs cannot prove a constitutional violation. (*Id.* at 17–18.) He says that he "appropriately and adequately cared for Mr. Abshire while he was a pre-trial detainee at the LPDC." (*Id.* at 18.)

Even if the Court finds a constitutional violation, Dr. Taylor avers that his actions were objectively reasonable, as he attempted to get Mr. Abshire specialty care and the Optune, but Hurricane Ida, DOC's referral procedures, and the COVID protocols of the LPDC prevented Mr. Abshire from receiving this care. (*Id.* at 19–20.) He finally repeats his argument that there is no evidence of causation and therefore he is entitled to qualified immunity. (*Id.* at 20.)

7

ii. *Opposition (Doc. 66)*

1. Deliberate Indifference

Plaintiffs respond to Dr. Taylor's argument that he was not deliberately indifferent by citing to this Court's ruling on Dr. Taylor's *Motion to Dismiss*, which said that the refusal to provide the Optune despite knowledge that Mr. Abshire needed it was deliberate indifference and every reasonable officer would know that. (Doc. 66 at 3 (quoting *Abshire v. Livingston Par.*, No. CV 22-548-JWD-SDJ, 2023 WL 3589657, at *9 (M.D. La. May 22, 2023).) They argue that the facts produced in discovery further support their claim for deliberate indifference. (*Id.*) Plaintiffs say that Dr. Taylor "failed to attend to Mr. Abshire's serious medical needs," and lacked diligence in not providing the Optune or a visit to the oncologist. (*Id.*) They claim that Dr. Taylor's deliberate indifference was a violation of the Eighth Amendment right to be free of unnecessary and wanton infliction of pain. (*Id.* at 3–4.)

Plaintiffs argue that "[a] non-medical reason for delay in treatment constitutes deliberate indifference." (*Id.* at 4 (citing *Delaughter v. Woodall*, 909 F.3d 130, 138 (5th Cir. 2018)).) They say that the delay in Mr. Abshire getting the Optune was not due to "medically-based decision-making," rather it was based on indifference and apathy. (*Id.* at 4.) They look to Dr. Taylor's inaction surrounding the Optune, saying that he did not attempt to figure out how it works or attempt to set it up. (*Id.* at 5.) The actions that Dr. Taylor did take, like telling Ms. Chaney to "get with Ben" regarding the request that Warden Benjamin Ballard allow a Novocure Representative come into the LPDC, were not enough to "rise to the level of 'medical care' . . . ." (*Id.* at 5–6.)

"Dr. Taylor had a non-delegable duty to provide medical care to Mr. Abshire." (*Id.* at 6.) Plaintiffs argue that this duty arises from a Supreme Court decision, *West v. Atkins*, which said that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to

8

provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." (*Id.* (quoting *West v. Atkins*, 487 U.S. 42, 56 (1988)) (internal quotation marks omitted).) They argue that Dr. Taylor cannot shift the responsibility of medical care onto Ms. Chaney, a nurse. (*Id.*)

Further, Plaintiffs contend that withholding necessary treatment can constitute deliberate indifference, and Dr. Taylor withheld necessary treatment from Mr. Abshire for two months. (*Id.* at 7.) They aver that Dr. Taylor knew that Mr. Abshire needed the Optune and "did not take easily available steps to make the device available, such [as] reading the instruction manual, calling the company, or sending them an email asking for help." (*Id.*) Plaintiffs say that Dr. Taylor also did not allow Mr. Abshire to go to his MRI appointment with Dr. Trevino because of his understanding of a DOC rule. (*Id.* at 7–8.) More specifically, Dr. Taylor did not try to transfer Mr. Abshire because he thought that the DOC had a rule requiring that all specialty medical services be performed by University Medical Center or Lallie Kemp Hospital. (*Id.*) However, Louisiana Revised Statutes § 15:831, the law requiring that inmates be treated within the charity hospital system, does not apply to pre-trial detainees like Mr. Abshire. (*Id.* at 9.) Plaintiffs argue that Dr. Taylor should have investigated the DOC rule to see if it applied to Mr. Abshire. (*Id.*)

Plaintiffs next argue that Dr. Taylor should have requested a compassionate release for Mr. Abshire because he knew,

> (1) the LPDC did not have the facilities necessary to care for a cancer patient like Mr. Abshire; (2) Mr. Abshire was not getting access to his Optune at the LPDC; (3) Mr. Abshire needed to see an oncologist; (4) Mr. Abshire did not see an oncologist at any during his incarceration; and (5) knew that compassionate releases were available at the LPDC.

(*Id.* at 9–10.) They argue that Dr. Taylor knew that compassionate releases were available but failed to familiarize himself with the process to request a release. (*Id.* at 10.) Warden Ballard had

9

been involved in many compassionate releases, but he was not contacted by Dr. Taylor or Ms. Chaney. (*Id.*) Plaintiffs maintain that since there were ways for Mr. Abshire to receive his care and Dr. Taylor failed to provide that care, a reasonable jury could find that Dr. Taylor was deliberately indifferent toward Mr. Abshire. (*Id.*)

In response to Dr. Taylor's alleged justifications, Plaintiffs say that these are "several exaggerations and excuses[.]" (*Id.* at 11.) They point out that Dr. Taylor did not attempt to get the Optune set up, he simply told Ms. Chaney to contact the warden. (*Id.*) Further, they repeat the argument that the Optune may be used right out of the box, but Dr. Taylor did not attempt to make it available to Mr. Abshire. (*Id.*) Plaintiffs also argue that, according to Warden Ballard, the LPDC did not have a policy in 2021 that prohibited outside vendors from entering the facility. (*Id.* at 12.) Additionally, Plaintiffs say that if Dr. Taylor had looked into the DOC rule about specialist care, Mr. Abshire would have been able to go to his appointment on August 19, 2021, avoiding the cancelled appointment because of Hurricane Ida. (*Id.* at 12–13.)

2. Causation

Plaintiffs concede that they do not have medical evidence to prove that Dr. Taylor caused Mr. Abshire's death. (*Id.* at 13.) However, they are still pursuing damages for emotional distress, pain and suffering, and humiliation caused by Dr. Taylor not providing his Optune, not letting him see an oncologist, and giving minimally necessary care. (*Id.*) Plaintiffs are asserting that Mr. Abshire experienced mental and emotional distress while and because his treatment was delayed and that these damages are compensable under § 1983. (*Id.*)

Plaintiffs argue that they do not need an expert to testify on the causation of Mr. Abshire's damages because it is within the common sense of a lay person that someone with cancer not receiving needed treatment would be in mental distress. (*Id.* at 13–16.) They cite to Mr. Abshire's

numerous Viapath messages to his family where he told them how distressed and in pain he was. (*Id.* at 16–17.)

### 3. Qualified Immunity

Finally, Plaintiffs argue that Dr. Taylor is not entitled to qualified immunity because the right of pre-trial detainees to necessary medical care is a clearly established Fourteenth Amendment right. (*Id.* at 18.) They cite to this Court's previous ruling stating that every reasonable officer would know that Dr. Taylor's conduct was deliberately indifferent. (*Id.* at 18.)

Plaintiffs re-urge their argument that the doctrine of qualified immunity is unsound. (*Id.* 18–19.)

### iii. *Reply (Doc. 75)*

#### 1. Deliberate Indifference

In response, Dr. Taylor argues that "Plaintiffs have presented no competent evidence that Dr. Taylor refused to treat Mr. Abshire, ignored his complaints, or intentionally treated him incorrectly." (Doc. 75 at 4.) He says that Plaintiffs have not offered any evidence to contradict Dr. Olson's opinion that Dr. Taylor acted appropriately. (*Id.*)

Dr. Taylor addresses *Delaughter*, cited by Plaintiffs, by saying that it actually supports his position that summary judgment should be granted. (*Id.*) He argues that the court in *Delaughter* affirmed the granting of summary judgment because the doctor did not have the "authority to authorize, schedule, or pay for Delaughter's surgery." (*Id.* at 5 (quoting *Delaughter*, 909 F.3d at 136).) Dr. Taylor says that the same is true here, he "did not have the requisite personal involvement to be liable to Plaintiffs for medical indifference." (*Id.*) He also argues that Novocure's Representative cannot give expert opinion testimony regarding the Optune that rebuts Drs. Taylor and Olson's testimony that the Dr. Taylor and Livingston Parish appropriately sought

11

training and that the Optune should not be used by someone who has not been trained on it. (*Id.* at 6.)

Dr. Taylor insists that he "did not ignore, refuse to treat, or refuse to refer Mr. Abshire out for treatment." (*Id.* at 8.) He looks to his deposition testimony, where he said that he does not know how the transport and referral process would have gone if the DOC referral rule had not been in place because there are several factors to consider. (*Id.*) Further, he says that there is no evidence that Dr. Taylor and Ms. Chaney were wrong in believing they did not have the authority to request a compassionate medical release. (*Id.* at 8–9.) Dr. Taylor once again argues that Plaintiffs have not produced evidence to rebut Dr. Olson's opinion that the Optune required set up by the manufacturer. (*Id.*)

2. Causation

Dr. Taylor first argues that Plaintiffs cannot seek emotional damages because the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) does not allow for mental or emotional damages without a showing of physical injury. (*Id.* at 10.) He says that Plaintiffs have not alleged that Mr. Abshire suffered any physical injury and cannot prove that any injury was caused by Dr. Taylor. (*Id.* at 10–11.) Plaintiffs have conceded that they lack evidence to show that Mr. Abshire's death was caused or hastened by Dr. Taylor. (*Id.* at 11.) Dr. Taylor argues that Plaintiffs do need expert testimony to rebut defense expert testimony that the lack of the Optune did not cause Mr. Abshire's tumor recurrence. (*Id.*)

Dr. Taylor objects to the Viapath messages from Mr. Abshire on the grounds that they "do not establish a disputed issue of fact." (*Id.* at 12.) Just because Mr. Abshire spoke about his care does not mean his statements are accurate. (*Id.*) He also argues that the messages would not be able to be presented in an admissible form at trial because they are not verified or certified and "it

is unlikely that there are any witnesses to attest to the accuracy of the statements contained therein." (*Id.*)

### 3. Qualified Immunity

Dr. Taylor contends that the cases cited by Plaintiffs are not applicable to this case because they are factually distinguishable. (*Id.* at 13.)

**b. Law and Analysis**

**i. Introduction**

In summary, the Court will grant the *Motion for Summary Judgment*. Although there are genuine issues of material fact regarding the actions that Dr. Taylor took while Mr. Abshire was incarcerated, Plaintiffs have failed to raise a genuine issue of material fact as to whether Dr. Taylor was deliberately indifferent to Mr. Abshire. Because Dr. Taylor provided care to Mr. Abshire which was, at worst, negligent or even grossly negligent, he did not exhibit a wanton disregard for Mr. Abshire's serious medical needs. Therefore, Plaintiffs cannot meet their burden to prove that there was a constitutional violation and thus Dr. Taylor is entitled to qualified immunity.

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Qualified immunity involves answering two questions: (1) whether the officer violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *Parker v. LeBlanc*, 73 F.4th 400, 406 (5th Cir. 2023) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009))) (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### ii. Constitutional Violation

"The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The Fifth Circuit recognizes "that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 643). Whether the inmate is a pretrial detainee or a state inmate, "the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights . . . ." *Id.* As will be explored in more detail below:

> [D]eliberate indifference is "an extremely high standard." The prisoner "must first prove objective exposure to a substantial risk of serious harm"—in other words, the prisoner must prove a serious medical need. Second, the prisoner must prove the officials' subjective knowledge of this substantial risk. Third, the prisoner must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment. Finally, the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. Importantly, "disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference."

*Petzold v. Rostollan*, 946 F.3d 242, 248–49 (5th Cir. 2019) (internal footnotes omitted).

Here, Dr. Taylor argues that he was not deliberately indifferent because, although he did not provide the Optune to Mr. Abshire, he did respond to his medical needs through visits, continuing medication, and referring him for an MRI. (Doc. 57-1 at 12.)

The first element of a deliberate indifference claim is that Plaintiffs must establish there was a substantial risk of serious harm to Mr. Abshire, in other words, a serious medical need. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one

14

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mounce v. Doe*, No. 12-669, 2014 WL 2587698, at *23 (E.D. La. June 10, 2014). Both parties agree that Mr. Abshire had been diagnosed with glioblastoma brain cancer, which is a particularly aggressive form of cancer. (*PSUMF*, Doc. 66-1 at 9–10, ¶¶ 1–2; *RPSUMF*, Doc. 75-1 at 1, ¶¶ 1–2.) The parties do not dispute that Mr. Abshire had been prescribed the Optune to prevent tumor regrowth. This cancer posed a serious threat to Mr. Abshire's life and the Optune was intended to decrease that threat. Therefore, Plaintiffs can prove the first element of the deliberate indifference claim.

Next, Plaintiffs must prove that Dr. Taylor knew of this substantial risk. Dr. Taylor admits that he spoke to Dr. Trevino about Mr. Abshire's diagnosis and the need for the Optune. (Doc. 57-2 at 4, ¶¶ 21–22.) Thus, the second element is met.

Next, Plaintiffs must prove that Dr. Taylor was deliberately indifferent in denying or delaying Mr. Abshire's care, despite knowledge that he needed it. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). "He must allege that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Stevenson v. Tocé*, 113 F.4th 494, 502 (5th Cir. 2024) (quoting *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)). Moreover, " '[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.' " *Gobert*, 463 F.3d at 346 n.24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)). Again, "[d]eliberate indifference 'is an extremely high standard to meet.'" *Id*. (quoting *Domino*, 239 F.3d at 756).

15

Even looking at the evidence in the light most favorable to Plaintiffs, Dr. Taylor's actions were not deliberately indifferent.

The parties agree that Dr. Taylor did visit Mr. Abshire while he was incarcerated and continued his prescription medications. (*TSMF*, Doc. 57-2 at 4, ¶¶ 17–18.) Dr. Taylor even increased one of Mr. Abshire's prescriptions. (*Id.*) He made a note in Mr. Abshire's chart that he would need an MRI if his neurological status declined and worked with DOC to schedule a specialist appointment. (*Id.* at ¶¶ 20, 29.) These actions show that Dr. Taylor was not ignoring Mr. Abshire or refusing to treat him; rather, his care to Mr. Abshire amounted to negligent or even grossly negligent conduct, which is insufficient to establish deliberate indifference.

Examples of the Fifth's Circuit's application of this standard abound. In *Zaunbrecher v. Gaudin*, Zaunbrecher was an inmate at the Ascension Parish jail for approximately seven weeks before his death. 641 Fed. App'x 340, 341 (5th Cir. 2016). When he was admitted into the jail, he told jail officials about some of his pre-existing medical conditions but did not inform them that he suffered from diverticulitis. *Id.* While at the jail, Zaunbrecher complained of severe back pain and requested refills on his Ibuprofen. *Id.* at 341–42. The nursing staff did not examine Zaunbrecher until three days after his initial medical request, where he complained of constipation and back pain. *Id.* at 341. During this examination, the nurse offered Zaunbrecher Tylenol for his pain, and noted that he had decreased bowel sounds. *Id.* The nurse offered Zaunbrecher a laxative, but the next day Zaunbrecher submitted a medical form complaining that the laxative had not worked. *Id.* Another nurse examined Zaunbrecher that day, determined that the stimulant laxative did not work, and prescribed a more powerful one. *Id.* at 343. Over the next few days, Zaunbrecher began vomiting and the nursing staff only advised to take additional measures if his condition worsened. *Id.* Zaunbrecher did worsen, and jail staff was ordered by the nursing staff to get him to

16

a hospital, but that they did not need an ambulance. *Id.* It took 45 minutes to transport him to a hospital that was 15 minutes away from the jail. *Id.* Zaunbrecher died on the way to the hospital, as a result of "acute peritonitis due to narrowing of the bowel and bowel obstruction due to diverticulitis." *Id.* at 343–344 (internal quotation marks omitted).

The Fifth Circuit held that even though the nursing staff's misdiagnosis of Zaunbrecher may have led to his death, their actions did not rise to the level of deliberate indifference. *Id.* at 346.

> A trier of fact might find that several of Richard's actions—*e.g.*, her failure to read Zaunbrecher's medical request forms before treating him, her failure to follow-up with Zaunbrecher, her failure to instruct to Jail's guards to monitor him, or her failure to notify Gautreau of Zaunbrecher's symptoms—could amount to ill-advised decisions not to provide additional treatment or a failure to adhere to an appropriate standard of care. Yet, such acts are not the type of "egregious intentional conduct" that rises to the level of deliberate indifference.

*Id.* The nurses were granted qualified immunity. *Id.* at 349.

In *Thomas v. Carter*, an inmate requested follow-up appointments with a specialist to have hip replacement surgery, but no appointment was scheduled. 593 Fed. App'x 338, 340–42 (5th Cir. 2014) (per curiam). The Court said that "[w]hile the intentional failure to schedule an appointment with a medical specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not." *Id.* at 344 (citing *Carrothers v. Kelly*, 312 Fed. App'x 600, 602–03 (5th Cir. 2009)). The Fifth Circuit applied this same standard in *Stewart v. Murphy*, where a doctor did not discover a decubitus ulcer on an inmate's back after treating him for five days, then ordered that the ulcer be cleaned and treated with antibiotics and be treated with follow-up care. 174 F.3d 530, 534 (5th Cir. 1999). The Court held that the doctor was not deliberately indifferent because the care was "far more than 'rudimentary' medical care." *Id.*

17

The same is true here. Plaintiffs have raised issues of fact as to whether Dr. Taylor could have done more for Mr. Abshire and whether Taylor's treatment met the standard of care or was negligent. His failures to have Mr. Abshire seen by a specialist, arrange for timely additional testing, or get Mr. Abshire compassionate release may have been due to a misunderstanding of the applicable policies. But the standard for establishing deliberate indifference is not negligence or even gross negligence. *Henderson v. LeBlanc*, No. 16-265, 2018 WL 2050149, at *6 (M.D. La. May 2, 2018) (deGravelles, J.) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Here, there is no question that Dr. Taylor provided care to Mr. Abshire. He did not ignore Mr. Abshire's complaints and made efforts to have Mr. Abshire seen by a specialist. While these efforts may have been suboptimal or even negligent, they do not "evince a wanton disregard for any serious medical needs." *Stevenson*, 113 F.4th at 502 (internal quotation marks omitted). Therefore, even when looking at the evidence in a light most favorable to Plaintiffs, it is clear under the prevailing standard that they will not be able to prove a constitutional violation.[3]

Because Plaintiffs cannot prove a constitutional violation, they will not be able to overcome Dr. Taylor's qualified immunity. The Court need not reach the issue of whether the right was clearly established or whether the alleged denial of or delay in treatment resulted in substantial harm. Dr. Taylor is immune from suit and is entitled to summary judgment. Plaintiffs' claim against Dr. Taylor will be dismissed.

The Court finds that, even when looking at the evidence in a light most favorable to the non-movant, Plaintiffs will not be able to prove a constitutional violation because Dr. Taylor's

---

[3] The Court notes that, at the motion to dismiss stage, it held that Plaintiffs had overcome qualified immunity. The *Complaint* does not mention any other care that Mr. Abshire received while incarcerated. (Doc. 1.) The facts revealed in the *Motion for Summary Judgment* detail the care that Dr. Taylor gave Mr. Abshire that was not included in the *Complaint*, and support a finding of qualified immunity here.

actions did not rise to deliberate indifference. Therefore, the Dr. Taylor is entitled to qualified immunity and the *Motion for Summary Judgment* will be granted.

The Court notes Plaintiffs' renewed objection to the doctrine of qualified immunity, but as explained more fully in this Court's ruling on Dr. Taylor's *Motion to Dismiss*, it must follow Supreme Court and Fifth Circuit precedent that recognizes qualified immunity and reject Plaintiffs' argument. No. 22-548, 2023 WL 3589657, at *9–10 (M.D. La. May 22, 2023) (deGravelles, J.).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 57) filed by Defendant Dr. James Taylor is **GRANTED**, and all claims by Plaintiffs against Dr. James Taylor will be **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on February 6, 2025.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**